[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12605 ; 11-14750
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 14, 2012
JOHN LEY
CLERK

D.C. Docket No. 4:08-cv-00569-RH-WCS

RYAN HARRIS,

                                                        Plaintiff - Appellant,

versus

SHERIFF, JEFFERSON COUNTY FLORIDA,

                                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(March 14, 2012)

Before WILSON, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

A jury returned a verdict in favor of plaintiff Ryan Harris, but upon the defendant's motion, the district court found the great weight of the evidence was contrary to the verdict. Accordingly, the district court ordered a new trial. We reverse and remand because sufficient evidence supported the jury's finding that the Sheriff's negligence caused Harris's injuries.

I.

In December 2004, Harris was an inmate at the Jefferson County Jail awaiting trial for criminal charges. On December 21, 2004, he attempted suicide by overdosing on antidepressant drugs that he obtained from another inmate. Officials at the jail did not promptly arrange medical treatment, and Harris's arrival at the hospital was delayed by one or two hours. He survived but did not fully recover. Harris's physical injuries include neurological damage, nerve damage to his legs, and bilateral foot drop. One doctor testified that Harris cannot walk.

Harris sued the Sheriff who operated the jail. He alleged the Sheriff (1) negligently failed to prevent him from attempting suicide, (2) negligently failed to arrange prompt medical treatment after the suicide attempt, and (3) under 42 U.S.C. § 1983, violated his constitutional rights. A jury returned a verdict for Harris on each claim. It found damages of one dollar on the failure-to-prevent-

2

suicide claim and attributed ten percent of the fault to the Sheriff.  The jury found damages of $750,000 on the claims concerning delayed medical treatment, and it attributed to the Sheriff ninety percent of the fault.

After the trial the Sheriff moved for judgment as a matter of law and, in the alternative, for a new trial.  The district court denied the motion for judgment as a matter of law but granted the request for a new trial.  The court noted what it considered to be an inconsistency in the jury verdict: the damages for the attempted suicide were nominal, but the damages caused by the negligent delay were substantial.  The district court reasoned that the verdict could not stand because Harris "presented no evidence that [his] substantial damages could have been avoided, even if jail officials had acted as promptly as possible . . . ."

Harris's primary evidence on causation was the testimony of one of his treating physicians, Dr. Hultstrand.  The doctor testified that if Harris had arrived at the hospital an hour or two earlier, steps could have been taken that would have prevented injury.  Antiseizure medication could have been administered to prevent prolonged seizures.  Additionally, Harris's condition would have benefitted from earlier intubation and administration of a bicarbonate.

The district court discounted the testimony because when Harris arrived at the hospital the physicians did not know he had overdosed on drugs, and the court

3

reasoned that an earlier arrival would not necessarily have meant earlier implementation of procedures that would have helped Harris. After reviewing the record, the district court concluded that medical staff did not promptly initiate the procedures, and therefore, an earlier arrival at the hospital would have been futile.

Harris also provided evidence that his injuries might have been avoided if the jail had notified the hospital that he had access to medications including Desyrel, a tricyclic antidepressant. It was not until January 5, 2005—fourteen days after Harris was admitted to the hospital—that jail officials informed Dr. Hultstrand that Harris may have swallowed tricyclic antidepressants. Dr. Hultstrand testified that if this information had been delivered the day Harris arrived at the hospital, measures could have been taken to improve Harris's condition.

## II.

"[W]hen the district court discards the verdict on the ground it is against the great weight of the evidence," our review is "extremely stringent." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009) (per curiam). The heightened standard of review ensures that the district court does not substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury. *Rosenfield v. Wellington Leisure Prods., Inc.*, 827

4

F.2d 1493, 1498 (11th Cir. 1987) (per curiam). The question is whether, in light of the evidence presented, reasonable jurors could reach the same conclusion as the jury did here. *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 679 n.1 (11th Cir. 1984). Because of the great deference we give to jury verdicts, we answer this question in the affirmative.

The district court does not identify what evidence in the record supports its independent conclusion that an earlier arrival would have been futile. The defendant did not present its own expert to rebut Dr. Hultstrand's conclusion that preventive procedures would have been taken had Harris arrived at the hospital earlier. And during the cross examination of Dr. Hultstrand, the defendant did not elicit any testimony on the issues of whether the preventive procedures would have actually been implemented.

Even assuming that the great weight of the evidence supports the district court's conclusion that the hospital would not have taken the preventive measures until it discovered that Harris overdosed on drugs, evidence supports the theory that jail officials did not promptly notify the hospital that Harris had access to tricyclic antidepressants. Although we might not reach the conclusion, a reasonable jury could conclude that the cause of Harris's injuries was a delay in alerting the hospital that Harris had access to tricyclic antidepressants.

We **REVERSE** and **REMAND** so the district court can reinstate the jury

verdict returned in the first trial.